IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV1136 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $6,728.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $6,728.00 in U.S. Currency, which was seized on April 6, 2019, in Greensboro, North Carolina, and is currently in the custody of the United States Marshals Service.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 15th day of November, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


 */s/* Nathan L. Strup
Nathan L. Strup, Mo. Bar No. 60287
Assistant U.S. Attorney
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
(336) 333-5351/nathan.strup@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

*David L. Webster* (signature)

David L. Webster
Special Agent
Drug Enforcement Administration

# DECLARATION

I, David L. Webster, a Special Agent with the Drug Enforcement Administration (DEA), hereby state, pursuant to 28 U.S.C § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I have been a DEA Special Agent since 1998, and am currently assigned to the Greensboro Resident Office. I have been a sworn Law Enforcement Officer for approximately 31 years. In my official duty as a Special Agent, I investigate criminal and civil violations of the Federal Controlled Substances Act. I have received special training to enforce the laws of the Federal Controlled Substances Act. I have testified in judicial proceedings for violations of laws concerning controlled substances. I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony arrests for criminal violations of the Federal Controlled Substances Act. I have conducted and assisted with numerous narcotics-related investigations that resulted in the seizure of narcotics and related assets. Because of my training and experience, I am familiar with the methods and trends of trafficking in illicit drugs, as well as methods used by narcotics traffickers to conceal the proceeds of their unlawful activities from law enforcement.

2. The facts set forth in this declaration are based on both my personal knowledge and experience, and information provided by other law enforcement officers who participated in the investigation described below, and on records maintained by state

1



and local government agencies. This declaration does not set forth all facts known to me or other law enforcement officers concerning the investigation.

3. This declaration is submitted in support of a Verified Complaint of Forfeiture for $6,728.00 in U.S. Currency seized on April 6, 2019, from Raekwon Marquis BRINKLEY.

4. Based on the facts set forth below, there is probable cause to believe that the $6,728.00 in U.S. Currency seized on April 6, 2019, is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

5. On April 6, 2019, Officer T.D. Brown with the Greensboro Police Department (GPD) was patrolling Kim's Mart Convenience Store on Phillips Avenue, Greensboro, North Carolina, a known location for high narcotics traffic. Officer Brown observed a male individual who is referred to herein as "F.C." F.C. is a known Bloods Gang member with a history of narcotics and violent criminal offenses.

6. Officer Brown observed F.C. standing by the driver's side door of a blue Mercedes vehicle parked at Kim's Mart Convenience Store. The Mercedes was registered to an individual who is F.C.'s sister. The North Carolina registration for the Mercedes was expired.

7. Officer Brown observed F.C. walk into Kim's Mart Convenience Store. F.C. exited Kim's Mart Convenience Store a few seconds later, returned to the driver's side of the Mercedes, and retrieved a bag from inside the vehicle. F.C. then walked back into Kim's Mart Convenience Store and remained for approximately one minute and then exited the store without the bag. F.C. then got into the Mercedes and drove away.

2

8. Officer Brown went inside Kim's Mart Convenience Store where he came across a male individual referred to herein as "J.E." J.E. is a known Bloods Gang member.

9. Officer Brown observed that J.E. was in possession of a red bag. Officer Brown approached J.E. and engaged him in conversation. Upon approaching J.E., Officer Brown detected the odor of marijuana. Officer Brown stated to J.E., "Man, I smell weed, you got weed in that bag?" J.E. responded, "I ain't got no weed man, you can look in the bag, you can smell it," while unzipping the red bag. J.E. then opened the red bag and revealed its contents to Officer Brown.

10. Officer Brown looked into the bag and observed a large amount of U.S. Currency, tattoo equipment, and a white plastic shopping bag containing a large amount of a white substance that Officer Brown believed to be cocaine. Officer Brown asked J.E. about the U.S. Currency. J.E. responded "that's my tattoo money, I do tattoos." Officer Brown pointed at the plastic white shopping bag and asked J.E. what was inside. J.E. then slapped Officer Brown's hand and stated, "that's just my tools." Officer Brown attempted to place J.E. under arrest, at which time J.E. struggled and ran out of Kim's Mart Convenience Store with the red bag. During the struggle and flight, a shopping bag containing approximately two-hundred fifty (250) grams of the white substance, an amount of the aforementioned U.S. Currency, tattoo equipment, and a shirt dropped from the red bag. The white substance was later sent to the North Carolina State Crime Laboratory for testing; results are pending.

11. Officer Brown observed J.E. flee toward a nearby housing complex and did not give chase. Officer Brown collected the cocaine, U.S. Currency, equipment, and shirt

that had dropped from the red bag. Officer Brown requested assistance and for a K-9 Unit to respond. Multiple GPD officers responded. Officers were able view surveillance cameras from the housing complex to determine that J.E. had entered an apartment at the housing complex.

12. Officer Brown viewed surveillance video of Kim's Mart Convenience Store. F.C. is shown arriving at the store in the Mercedes vehicle. J.E. is shown exiting Kim's Mart Convenience Store and walking to the driver's side of the Mercedes and conversing with F.C. before entering the vehicle through the right rear passenger door with a red bag in his possession. J.E. is shown briefly sitting in the right rear passenger seat of the Mercedes, but never fully closing the door. J.E. is then shown transferring items into and/or out of the aforementioned red bag, and then re-entering Kim's Mart Convenience Store with said bag. At the time J.E. enters Kim's Mart Convenience Store, Officer Brown is shown pulling into the parking lot.

13. While at Kim's Mart Convenience Store, Officer Brown was advised that an employee of the store had recently seen a male individual enter the store and place another bag in the employee bathroom. Officer Brown then entered the employee bathroom and found a brown Louis Vuitton tote bag inside. In the brown bag, Officer Brown found an amount of U.S. Currency later determined to be $9,140.00.

14. A store employee then advised Officer Brown that the male individual who left the bag in the employee bathroom was back in the store. Officer Brown observed the individual in the store and recognized him as F.C.

4

15. Officer Brown asked F.C. if he had forgotten something at the store. F.C. responded, "What?" Officer Brown asked the same question. F.C. responded, "some cash?" Officer Brown detained F.C. due to observing him driving without an operator's license and the expired vehicle registration, and for the current narcotics investigation. F.C. later admitted to leaving the bag with $9,140.00 in U.S. Currency inside of Kim's Mart Convenience Store. The $9,140.00 in U.S. Currency was administratively forfeited on October 2, 2019.

16. GPD patrol officers who had responded to Officer Brown request for assistance then advised over the radio that they had observed a male individual matching the description of J.E. running across Phillips Avenue near Kim's Mart Convenience Store, towards Lombardy Street. As the officers approached, the individual fled by foot and in doing so threw and dropped various amounts of U.S. Currency along his route through a grassy area and toward a wooded area behind Kim's Mart Convenience Store. Officers determined that the individual was actually Raekwon BRINKLEY, not J.E.

17. Officers pursued BRINKLEY into the wooded area behind Kim's Mart Convenience Store. BRINKLEY was then apprehended and arrested. When apprehended, BRINKLEY had an additional U.S. Currency rubber banded in stacks within a small bag inside a camouflage bag that also contained digital scales and marijuana residue. Officers then took BRINKELY to Kim's Mart Convenience Store.

18. Officer Brown spoke with BRINKLEY at Kim's Mart Convenience Store. Officer Brown recognized BRINKLEY as having been present in Kim's Mart Convenience Store during his earlier encounter with J.E., as described above in paragraphs 8-10.

5

19. BRINKLEY provided Officer Brown with a false name and birthdate. Officer Brown asked BRINKLEY about the U.S. Currency described above in paragraphs 16 and 17. BRINKLEY initially stated that he received the money from playing fish game tables. BRINKLEY later stated that he found some of the money on the ground outside of Kim's Mart Convenience Store, after J.E. had fled on foot and dropped the money.

20. BRINKLEY was transported to the Guilford County Jail, where he advised Officer Brown that a portion of the U.S. Currency recovered from him was not his and that he collected the money from a red bag in J.E.'s possession. BRINKLEY stated the red bag was now located behind a dumpster in front of an apartment building on Phillips Avenue. Officers responded to the apartment building and discovered a red bag behind a dumpster on the premises. A search of the red bag yielded only probation officer business cards and counterfeit hundred dollar bills with Chinese markings on them.

21. In total $7,648.00 in U.S. Currency was recovered from BRINKLEY. The U.S. Currency was placed into evidence bags and initially turned over to Officer Brown at the scene. One of the evidence bags, containing $920.00 in U.S. Currency, subsequently fell between the front seats of Officer Brown's police vehicle and was discovered by him at the end of his duty assignment the next day, April 7, 2019, and then placed in a GPD evidence locker where it continues to be stored. The remaining $6,728.00 is the subject of forfeiture proceedings.

22. On April 9, 2019, GPD Detective A.J. Smith and narcotics detection canine K-9 Hacksaw conducted a blind sniff of the $6,728.00 in U.S. Currency in a controlled room located at Vice & Narcotics Division offices. K-9 Hacksaw and Detective Smith were

6

Case 1:19-cv-01136   Document 1-1   Filed 11/15/19   Page 6 of 10

deployed to the room without the currency. K-9 Hacksaw did not alert to the odor of controlled substance at that time. K-9 Hacksaw and Detective Smith then left the room. GPD Detective C.B. Cline then concealed the $6,728.00 in U.S. Currency in a wooden cabinet in the room. K-9 Hacksaw and Detective Smith, unaware of the location of the currency, were again deployed to the room, whereupon K-9 Hacksaw responded to the $6,728.00 in U.S. Currency contained in the wooden cabinet by giving positive alert to the odor of controlled substance.

23. Detective A.J. Smith has been a sworn law enforcement office with GPD for 11 years. Detective Smith is currently assigned as an Investigative Interdiction Detective on the Vice Squad in the Vice & Narcotics Division of GPD. Detective Smith has worked narcotics since May 2012. Detective Smith completed GPD's Basic Law Enforcement Training (BLET) in February 2009. In addition to BLET, Detective Smith has attended Basic Narcotics Investigators course, Airport Narcotics Investigations, Highway/Rural Drug Investigations, Advanced Criminal Interdiction, Basic Canine/Detector Dog Training, High Risk Apprehensions, Bus Interdiction, Parcel Interdiction, Train Interdiction, and numerous other seminars. Detective Smith has completed over 500 hours of training with the majority of the training focusing on illegal narcotics. Detective Smith has served GPD as a Patrol Officer, Police Training Officer, and as a street-level drug officer. Detective Smith is a member of the International Narcotics Interdiction Association and the International Police Working Dog Association. Detective Smith has conducted and assisted in numerous narcotics investigations leading to the arrest and conviction of narcotics traffickers in state and federal criminal cases.

24. In October 2018, Detective Smith was selected to be a Narcotics Detection Dog Handler and assigned to handle K-9 Hacksaw. K-9 Hacksaw is a seven year old Black Laboratory Retriever, a breed is specifically selected for keen senses and ability to be trained to detect the odor of controlled substances.

25. In October 2018, K-9 Hacksaw and Detective Smith underwent 200 hours of basic canine detection training with Corporal D. Diaz, a canine handler and trainer in the Canine Division of GPD with years of experience in the field. During his training, K-9 Hacksaw proved that he could reliably use his olfactory senses to locate narcotics training aids of actual controlled substances, including heroin, cocaine, crack cocaine, marijuana, hashish, methamphetamine, and ecstasy. K-9 Hacksaw and Detective Smith were initially certified as a Canine Narcotics Detection Team by the International Police Work Dog Association on December 7, 2018, in the detection of marijuana, cocaine, heroin, and methamphetamine, and then recertified on May 14, 2019. This certification is valid for 15 months from the date of issuance.

26. K-9 Hacksaw is trained to passively alert after detecting the odor of narcotics for which he has been trained. This passive alert consists of a physical reaction that ends in him coming to a sitting position and/or alternating looks between Detective Smith and the point of narcotics for which he is trained to detect. K-9 Hacksaw also exhibits various mental and physical reactions that are noticeable to Detective Smith. These include becoming possessive of the area, refusing to leave an area where the odor of narcotics is detected, and changing his breathing rate and sniffing patterns.

27. Detective Smith has demonstrated the ability to properly deploy and maintain a police narcotics canine and effectively locate controlled substances concealed in locations such as, but not limited to, sealed packages, residential homes and outbuildings, automobiles, tractor trailers, luggage, electrical components/appliances, and the ground during training. Beginning December 2018 to date, the detection team of K-9 Hacksaw and Detective Smith has located and seized no less than 183.5 pounds of marijuana, 4.4 pounds of methamphetamine, 4.4 pounds of cocaine, and 6 pounds of heroin. K-9 Hacksaw has also successfully alerted to no less than $75,964.00 in U.S. Currency, as of Canine Usage Reports dated September 23, 2019.

28. BRINKLEY was arrested and charged with 1 count of Possession of Drug Paraphernalia and 2 counts of Resist, Delay, or Obstruct. BRINKLEY was also served with 10 orders for arrest for felony probation violations.

29. BRINKLEY'S criminal history includes arrests for Possession of Marijuana Paraphernalia on November 20, 2016, and April 6, 2019. BRINKLEY is unemployed.

30. The $6,728.00 in U.S. Currency was converted into a check from Wells Fargo Bank, and sent to the United States Marshal Service in Raleigh, North Carolina, where it was deposited into the Seized Asset Deposit Fund. DEA then began administrative forfeiture proceedings.

31. On July 18, 2019, DEA received a claim to the $6,728.00 in U.S. Currency from Kymmecca Stacey. The administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

32. Based upon the foregoing, there is probable cause to believe that the $6,728.00 in U.S. Currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This 15th day of November, 2019.

*David Webster* (signature)

David L. Webster
Special Agent
Drug Enforcement Administration